IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| DENNIS O. WILLIAMS, <br><br> Plaintiff, <br><br> v. <br><br> FEDERAL BUREAU OF INVESTIGATION, <br><br> Defendant. | **MEMORANDUM DECISION AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION TO COMPEL ADDITIONAL SEARCHES** <br><br> Case No. 2:13-cv-00056-DN <br><br> District Judge David Nuffer |

Plaintiff Dennis O. Williams ("Williams") brought this action against Defendant, the Federal Bureau of Investigation ("FBI"), pursuant to the Freedom of Information Act[1] ("FOIA") to secure access to a single document allegedly in the FBI's possession. The FBI moved for summary judgment on the grounds that it has already conducted a search that satisfied its obligations under FOIA.[2] Williams opposes summary judgment and requests an order requiring the FBI to conduct additional searches for the document.[3]

The FBI has shown that it conducted a search that was reasonably calculated to retrieve the document, if it exists. In doing so, the FBI met its obligations under FOIA. The FBI's motion for summary judgment is granted. Williams's motion for an order compelling the FBI to conduct additional searches is denied.

---

[1] 5 U.S.C. § 552 (2012).

[2] Defendant's Motion for Summary Judgment and Supporting Memorandum (Summary Judgment Motion), docket no. 13, filed July 30, 2013.

[3] Plaintiff's Opposition to FBI's Motion for Summary Judgment and Motion to Have the FBI Conduct Additional Searches (Opposition to Summary Judgment), docket no. 16, filed Sept. 25, 2013.

# INTRODUCTION[4]

Williams filed a FOIA request with the FBI on October 31, 2012, seeking access to "a copy of a single document of short length."[5] The document ("Freeh Memorandum") is an FBI communication supposedly distributed sometime in 1993 by the then-new Director of the FBI, Louis Freeh. The Freeh Memorandum was allegedly sent to all FBI employees to advise them that Director Freeh "had been contacted by the Comptroller General regarding several investigations at the FBI," and that "he was drawing 'a bright line in the sand' and that if anyone obstructed an investigation he would be fired."[6]

The FBI acknowledged receipt of the request on November 5, 2012, and informed Williams that it would search for the Freeh Memorandum. On January 23, 2013, after receiving no further communications from the FBI, Williams filed suit under FOIA to compel the FBI to expedite his request and release the Freeh Memorandum.[7]

The FBI's initial search for the Freeh Memorandum looked to previous FOIA requests to determine whether the FBI had already produced the document in response to another request. This search resulted in a three page "AIRTEL"[8] dated January 3, 1994, which was distributed by Director Freeh to all, or nearly all, FBI offices ("1994 Freeh Memorandum"). The 1994 Freeh Memorandum stated that Director Freeh would be "drawing a 'bright line' which should serve to put all employees on notice of [his] expectations." It then outlined conduct that would merit termination in the Director's view, including "[l]ying under oath; [f]ailure to cooperate during an

---

[4] Unless otherwise noted, the facts in this section are taken from the FBI's Summary Judgment Motion. Summary Judgment Motion at 1–6. The facts are not disputed by Williams. Opposition to Summary Judgment at 4.

[5] Williams's FOIA Request, Exhibit A to Declaration of David Hardy, docket no. 13-2, filed July 30, 2013.

[6] *Id*.

[7] Complaint, docket no. 2, filed Jan. 23, 2013.

[8] An "AIRTEL" is a "communication sent to Field Offices about a matter which required immediate attention." Summary Judgment at 4 n.3.

administrative inquiry when required to do so by law or internal regulation; [and] . . . [m]aterial falsification of investigative activity and/or reporting . . . ."[9] Believing that it had found the Freeh Memorandum, the FBI stopped searching and informed Williams on February 25, 2013, that it located and would deliver the document he requested.

On March 5, 2013, Williams's attorney contacted the United States Attorney's Office for the District of Utah to notify them that neither he nor Williams had received a copy of the document located by the FBI. Williams was provided the 1994 Freeh Memorandum by the United States Attorney's Office on March 7, 2013. Williams' attorney informed the United States Attorney's Office the next day that the 1994 Freeh Memorandum was not responsive to his request. The FBI agreed to search further and requested that Williams provide additional information to assist the FBI in locating the Freeh Memorandum. Williams did not provide the FBI with any additional information.

The FBI conducted additional searches for the Freeh Memorandum based upon the information Williams provided in his initial FOIA request. Those searches took two forms. First, the FBI searched its Central Records System ("CRS"). The CRS consists of "administrative, applicant, criminal, personnel, and other files compiled for law enforcement purposes."[10] Information in the CRS is accessed through indices.[11] A search of the CRS will only generate a "hit" if the search terms have been indexed to some particular file.[12] With limited exceptions, the decision which terms to index with respect to a particular document is at the discretion of FBI agents.[13] The FBI searched the CRS using the search terms "Bright Line," "Bright Line in the

---

[9] Jan. 3, 1994, Freeh Memorandum, Exhibit C to Declaration of David Hardy, docket no 13-2, filed July 30, 2013.
[10] Declaration of David Hardy (Hardy Dec.) at 4, ¶13, [docket no. 13-1](docket no. 13-1), filed July 30, 2013.
[11] *Id*. at 4–5, ¶¶ 14–15.
[12] *Id*. at 6, ¶ 18.
[13] *Id*.

3

Sand," "1993 Freeh Memo," "Comptroller General" (limited to documents dated to 1993), and "SAC Memorandum."[14] That search did not recover any additional documents that appeared responsive to Williams's request.[15]

Second, the FBI contacted Director Freeh's speech writer, who could not recall whether Director Freeh issued any memorandum prior to 1994.[16] Additionally, the FBI contacted the Office of Public Affairs, but could not retrieve any additional information regarding the Freeh Memorandum.[17]

The parties disagree whether the FBI has satisfied its obligations under FOIA. The FBI claims that summary judgment is appropriate—and Williams's suit is moot—because its searches satisfied its FOIA obligations. Williams claims that summary judgment is not appropriate because the FBI's searches were inadequate. Williams requests an order requiring the FBI to conduct additional searches.

## DISCUSSION

### A. Standard of Review

Summary judgment is appropriate if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[18] A factual dispute is genuine when "there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way."[19] In determining whether there is a genuine dispute as to material fact, the court

---

[14] *Id*. at 7, ¶ 20.

[15] *Id*. at 7–8, ¶ 20.

[16] *Id*.

[17] *Id*.

[18] Fed. R. Civ. P. (56)(a).

[19] *Adler v. Wal-Mart Stores, Inc.,* 144 F.3d 664, 670 (10th Cir. 1998).

4

should "view the factual record and draw all reasonable inferences therefrom most favorably to the nonmovant."[20]

"FOIA was enacted to enable the public to examine government records."[21] It permits a person to obtain "copies of a federal agency's records upon making a request that reasonably describes such records and that complies with required procedures for requests."[22] Having received such a request, FOIA requires that "an agency shall make reasonable efforts to search for the records . . . ."[23] A person who believes that an agency has not complied with its obligations under FOIA may bring a claim against the agency in federal court and seek an order compelling compliance.[24] In this case, Williams claims that the FBI has not engaged in reasonable efforts to locate the document he requested.

Disputes over whether an agency has made reasonable efforts to search for documents are often resolved on summary judgment.[25] In such a case, "[t]he issue is *not* whether any further documents might conceivably exist but rather whether the government's search for responsive documents was adequate[,] . . . [which is determined under] a standard of reasonableness, and is dependent upon the circumstances of the case."[26] "The reasonableness of an agency's search turns on the likelihood that it will yield the sought-after information, the existence of readily available alternatives, and the burden of employing those alternatives."[27]

---

[20] *Id.*

[21] *Trentadue v. F.B.I.*, 572 F.3d 794, 796 (10th Cir. 2009).

[22] *Id*. (internal quotation marks omitted).

[23] 5 U.S.C. § 552(a)(3)(C) (2012).

[24] *Id*. § 552(a)(4)(B).

[25] *See*, *e.g.*, *Trentadue*, 572 F.3d at 807–08; *Schwarz v. F.B.I*, 161 F.3d 19 (10th Cir. 1998) (unpublished).

[26] *Trentadue*, 572 F.3d at 797 (alterations and emphasis in original) (quoting *Weisberg v. U.S. Dep't of Justice*, 705 F.2d 1344, 1351 (D.C. Cir. 1983)).

[27] *Id*. at 798 (internal quotation marks omitted) (quoting *Davis v. Dep't of Justice*, 460 F.3d 92, 105 (D.C. Cir. 2006)).

In moving for summary judgment, the agency carries the burden to show that its searches were reasonable.[28] The agency may carry that burden by submitting affidavits or declarations that "provide reasonable detail of the scope of the search. In the absence of countervailing evidence or apparent inconsistency of proof, such affidavits will suffice to demonstrate compliance with the obligations imposed by the FOIA."[29] "[D]eclarations and affidavits are the widely accepted, even the preferable, means for an agency to respond to concerns about the adequacy of a FOIA search."[30] "Agency affidavits are accorded a presumption of good faith, which cannot be rebutted by purely speculative claims about the existence and discoverability of other documents."[31]

### B. The FBI Engaged in Reasonable Efforts to Locate the Document Requested by Williams

The FBI submitted two detailed declarations regarding its searches. The declarations are by David M. Hardy, the Section Chief of the Record/Information Dissemination Section, Records Management Division of the FBI.[32] They establish Hardy's personal knowledge and supervisory role with respect to Williams's FOIA request;[33] provide a detailed explanation of the FBI's file system;[34] discuss the manner in which the FBI searched that system, including the various search terms that it employed;[35] discuss the searches it conducted outside of its electronic

---

[28] *Id*.

[29] *Id*. at 807 (quoting *Rugiero v. U.S. Dep't of Justice*, 257 F.3d 534, 547 (6th Cir. 2001)).

[30] *Id*.

[31] *SafeCard Servs., Inc. v. S.E.C.*, 926 F.2d 1197, 1200 (D.C. Cir. 1991) (internal quotation marks omitted) (cited with approval in *Trentadue*, 572 F.3d at 808).

[32] Hardy Dec. at 1, ¶ 1; Second Hardy Dec. at 4–5, ¶¶ 8–10.

[33] Hardy Dec. at 1–2, ¶¶ 1–3.

[34] *Id*. at 4–7, ¶¶ 13–18.

[35] Hardy Dec. at 7–8, ¶¶ 19–20; Second Hardy Dec. at 4, ¶ 9.

file system;[36] and provide reasons that additional searches would be both burdensome and unlikely to recover the Freeh Memorandum.[37] These declarations provide adequate detail regarding the scope of the FBI's search. Absent some evidence to the contrary, the declarations carry the FBI's burden on summary judgment to show that the searches satisfied the agency's FOIA obligations.

In response, Williams makes three arguments. First, Williams argues that the FBI's searches were not reasonably calculated to recover the Freeh Memorandum because they did not focus on locations in which the document is likely to be found.[38] Second, Williams argues that the FBI's declarations are not entitled to a presumption of good faith because there is evidence that the FBI has improperly withheld documents from Williams and other parties in the past.[39] Finally, Williams argues in a footnote that the FBI declarations include hearsay that cannot be considered on summary judgment.[40]

1. **Alternative Searches**

In his opposition to summary judgment, Williams claims that when responding to a FOIA request, the FBI "does not do a text-based search of the ECF [Electronic Case File] for the subject/document record."[41] According to Williams, "[a] better search and one more likely to have located the Memorandum requested by Williams would have been a text search of the documents contained in the ECF system and or a search under [Thomas] Pickard's name during

---

[36] Hardy Dec. at 7–8, ¶ 20.

[37] Second Hardy Dec. at 5–9, ¶¶ 11–16.

[38] Plaintiff's Reply Memorandum in Support of Motion to Have the FBI Conduct Additional Searches (Williams's Reply) at 7–9, docket no. 30, filed Dec. 30, 2013.

[39] Opposition to Summary Judgment at 41.

[40] *Id*. at 7 n.13.

[41] *Id*. at 5.

the narrow window in time of December of 1993 when the Memorandum was disseminated by Director Freeh."[42]

The Electronic Case File ("ECF") is one of three applications that supports case management functions and allows the FBI to search the Central Record System ("CRS").[43] The ECF "serves as the central electronic repository for the FBI's official text-based documents."[44] In the second declaration submitted by the FBI, Hardy clarifies that "[d]ue to the specific nature of the request, the FBI went beyond its normal searching policies and conducted a text search of the ECF" using a variety of search terms in an attempt to locate the Freeh Memorandum.[45] Because the FBI has already conducted keyword searches of the ECF, its search efforts cannot be inadequate for having failed to conduct such searches.

The FBI also provided good reason to believe that its search was reasonable despite its failure to search the name 'Thomas Pickard.' The significance of the Freeh Memorandum, according to Williams, is that it was issued after the Comptroller General informed Director Freeh of several congressional investigations directed at FBI officials, including Assistant Director Thomas Pickard.[46] Williams claims that both Pickard and Freeh subsequently obstructed the investigation of Pickard.[47] The Freeh Memorandum allegedly stated that individuals who engage in such conduct would be fired. According to Williams, the Freeh Memorandum shows that Pickard and Freeh should both have been fired.[48] Had they both been fired, Freeh and Pickard would not have been at the helm of the FBI leading up to September 11,

---

[42] *Id*.

[43] Second Hardy Dec. at 2–3, ¶ 5.

[44] Hardy Dec. at 5–6, ¶ 17(b).

[45] Second Hardy Dec. at 4, ¶ 9.

[46] Opposition to Summary Judgment at 3.

[47] *Id*.

[48] *Id*.

2001, and the FBI might not have failed to respond "to a significant lead related to the 9/11 attack upon the World Trade Center."[49]

None of this information was provided in Williams's FOIA request. His request does not mention the name 'Pickard' at all. When the FBI requested additional information from Williams to help find the Freeh Memorandum, Williams did not suggest that the FBI search the name 'Pickard.' It is only in his opposition to summary judgment that Williams has suggested that the name 'Pickard' might be helpful in locating the Freeh Memorandum. Because the FBI had no reason to think that the name 'Pickard' was in any way associated with the Freeh Memorandum, the FBI's searches were not unreasonable for failure to search the name 'Pickard.'[50]

It is also unlikely that a search of the name 'Pickard' would be productive. First, as the FBI notes, adding the name 'Pickard' to search terms that the FBI has already employed would only further narrow searches that yielded no results.[51] Second, the Freeh Memorandum was allegedly sent by Freeh to all employees to inform them they would be fired if they obstructed investigations directed at the FBI. It is "highly unlikely that any written directive from Director Freeh sent to all employees . . . would single out Mr. Pickard for specific mention by his name."[52] Third, the FBI argues that it is standard FBI policy with respect to FOIA requests not to search names of third persons without a privacy release from that person, proof of his death, or a showing that personal privacy interests are outweighed by a significant public interest."[53]

---

[49] *Id*.

[50] *See Roman v. Dep't of the Air Force*, 952 F. Supp. 2d 166, 175 (D.D.C. 2013) (rejecting plaintiff's argument that defendant should be forced to conduct additional searches suggested only in plaintiff's opposition to summary judgment because (1) plaintiff's FOIA request provided no reason to conduct the searches in question and (2) the defendant "is only obligated to conduct a search pursuant to Plaintiff's original request").

[51] Defendant's Reply Memorandum Supporting FBI Motion for Summary Judgment (FBI Reply) at 7–8, docket no. 26, filed Nov. 27, 2013.

[52] FBI Reply at 8.

[53] *Id*.

According to the FBI, Williams has not shown that the public significance of the Freeh Memorandum, if it exists, outweighs Pickard's privacy interests. There is no need to determine the public significance of the Freeh Memorandum because there are adequate, independent reasons for finding that the FBI's search was reasonable without searching for the name 'Pickard.'

In his reply in support of his motion to compel additional searches, Williams does not claim that the FBI should search in the ways just discussed. Instead, Williams proposes different searches. According to Williams, the FBI should conduct manual searches of "(1) former Director Freeh's personnel file and the personnel file of Acting Director Pickard; (2) the records prepared and maintained by the FBI's Office of Congressional Affairs; and (3) the records prepared of former Director Freeh's December 21, 1993, meeting with the Comptroller General."[54]

The Freeh Memorandum is not likely to be found in a personnel file. Such files "are the records of an individual's employment containing information of a personal and private nature."[55] Director Freeh's file would not contain a copy of each document the Director authored.[56] It is even less clear why it would be reasonable to expect that Thomas Pickard's personnel file would contain a memorandum authored by Director Freeh and distributed to all employees. The FBI's search was reasonable despite the fact that the FBI did not search these two personnel files.

Finally, Williams claims that the FBI should manually search both the records prepared and maintained by its Office of Congressional Affairs and the records associated with a meeting

---

[54] Williams's Reply at 4.

[55] Second Hardy Dec. at 8, ¶ 16.

[56] *Id*.

that allegedly occurred between Director Freeh and the Comptroller General on December 21, 1993. These suggestions were not offered in Williams's initial FOIA request, in response to the FBI's request for assistance in searching for the document, in Williams's opposition to summary judgment, or in Williams's motion to compel additional searches. These suggestions make their first appearance in Williams's reply in support of his motion to compel additional searches, the very last submission associated with the two motions under consideration. Because of the delay in suggesting these searches, the FBI has not had an opportunity to address them.

In any case, the FBI's search need only be reasonable, not exhaustive.[57] Even though the FBI search was unsuccessful, and even if the document might be located with additional searching, the search the FBI has already conducted was "reasonably calculated to uncover all relevant documents."[58] It is reasonable to expect that a memorandum authored by the Director of the FBI and distributed to all FBI employees would be located in the search the FBI already conducted. That the search was reasonable is reinforced by the fact that it uncovered another memorandum from approximately the same time, authored by Director Freeh, including similar language to the language allegedly in the Freeh Memorandum, and distributed to all FBI offices.

2. **Allegations of Bad Faith**

Williams claims that there is evidence the FBI acted in bad faith in response to his FOIA request. According to Williams, the evidence of bad faith renders summary judgment

---

[57] *See Miller v. U.S. Dep't of State*, 779 F.2d 1378, 1383 (8th Cir. 1985) (cited with approval in *Trentadue v. F.B.I.*, 572 F.3d 794, 797 (10th Cir. 2009)).

[58] *Weisberg v. U.S. Dep't of Justice*, 705 F.2d 1344, 1351 (D.C. Cir. 1983).

inappropriate,[59] and suggests the need for an order compelling additional searches on the part of the FBI.[60]

Williams's allegations of bad faith on the part of the FBI come in two varieties. First, Williams alleges that the FBI has a general practice of avoiding its obligations under FOIA when the documents requested might be embarrassing to the FBI.[61] Williams alleges that the FBI often fails to upload documents to the ECF so that such documents will not be located in a search[62] and uses a variety of files and drives—June Files, Zero Files, the I-Drive, the S-Drive—to "hide" documents that the FBI does not want to disclose.[63] Williams notes that, as recently as 2011, the FBI was found to have intentionally misled a court regarding the number of responsive documents recovered in response to a FOIA request.[64]

Second, Williams suggests—though, it is not clear whether he intends to do so—that his dealings with the FBI ten to twenty years ago provide evidence that the FBI did not make a good faith effort to locate the Freeh Memorandum. Williams alleges that he was a Supervisory Special Agent with the FBI in 1981 when he documented and reported fraud within the FBI.[65] Williams claims that over the next twenty years the FBI obstructed a series of investigations into this fraud and into the obstruction of the investigations of the fraud.[66] The Freeh Memorandum was allegedly authored and distributed after Director Freeh was informed of one such investigation.[67]

---

[59] Williams's Opposition at 44.

[60] Williams's Reply at 8–9.

[61] Williams's Opposition at 9–11, ¶¶ 1–5.

[62] *Id*. at 9–10, ¶ 2.

[63] *Id*. at 10–11, ¶¶ 3–5.

[64] *Islamic Shura Council of S. California v. F.B.I.*, 779 F. Supp. 2d 1114, 1117 (C.D. Cal. 2011).

[65] Williams's Opposition at 14–15, ¶ 7.

[66] Williams's Opposition at 14–31, ¶¶ 7–39.

[67] Williams's Opposition at 3.

These allegations are not sufficient to rebut the presumption that the FBI's declarations were submitted in good faith. As an initial matter, it is not clear how an order compelling the FBI to search Director Freeh's personnel file, for instance, would help in any way if, as Williams suggests may be happening, the FBI is secreting the Freeh Memorandum away in a separate drive. Nor is it clear why the FBI would be attempting to hide a document which was allegedly sent to *all* FBI employees and which merely stated that the obstruction of investigations merits termination. Indeed, the 1994 Freeh Memorandum, which was turned over to Williams by the FBI, says substantially the same thing.

The FBI discusses each of the drives and files that are allegedly used to hide information.[68] With respect to each, the FBI claims either that there is no such drive or file, or that the drive or file is used for innocuous purposes. The allegations that purport to show that the FBI acted in bad faith concern conduct that occurred in the past, and with respect to matters other than the present FOIA request. That the FBI has acted in bad faith in the past does not defeat the presumption of good faith in all subsequent cases. "The sufficiency of the affidavits is not undermined by a mere allegation of agency misrepresentation or bad faith, nor by past agency misconduct in other related cases."[69]

The only attempt to provide evidence that the FBI has acted in bad faith with respect to this particular FOIA request involves a 1994 Los Angeles Times news story. Williams claims that:

---

[68] Second Hardy Dec. at 5–8, ¶¶ 12–15.

[69] *Hoch v. C.I.A.*, 593 F. Supp. 675, 681 (D.D.C. 1984). *See also Peltier v. F.B.I.*, 03-CV-905S, 2005 WL 735964, at *8 (W.D.N.Y. Mar. 31, 2005) ("[E]ven assuming that the Government engaged in misconduct during the investigation of the murders and the prosecution of Plaintiff, it does not follow *a fortiori* that the Government continues to act in bad faith twenty-five years later in the processing of Plaintiff's FOIA request. There is simply no evidence whatsoever that Defendant has acted in bad faith during the course of these proceedings. Plaintiff's speculation to the contrary is simply insufficient to overcome the presumption of good faith due Defendant's supporting affidavits.").

the fact that the FBI found only this one document [the 1994 Freeh Memorandum] is indeed interesting because on March 8, 1994, the Los Angeles Times reported that Director Freeh had just announced tough new guidelines governing the conduct of FBI employees adding that he wanted to "draw a bright line." One would certainly have thought that the March of 1994 "draw a bright line" *memorandum* would have been located by the Bureau's text-based search, but for some strange reason it apparently was not.[70]

The fact that the FBI did not recover the March of 1994 memorandum referred to in the Los Angeles Times news story is supposed to show that the FBI's search was inadequate and in bad faith.

This argument fails for several reasons. First, it is not clear to which memorandum the news story is referring. The article was published on March 8, 1994, and states that "Director Louis J. Freeh announced tough new guidelines Monday governing the conduct of all FBI employees and job applicants . . . ."[71] This might suggest that the memorandum that was supposedly missed by the FBI's search was distributed in March of 1994. On the other hand, the "draw a bright line" language is quoted from "a directive to all FBI employees . . . ." The story is apparently referring both to guidelines issued in March and to a directive to all FBI employees. It is not clear from the story when the directive was issued. The language quoted from that directive occurs verbatim in the 1994 Freeh Memorandum disclosed to Williams by the FBI. The news story can consistently be read as quoting language both from guidelines issued in March of 1994 and the 1994 Freeh Memorandum. So read, it does not provide evidence that the FBI's search missed a memorandum from Director Freeh that included the "bright line" language.

Second, assuming that there was an additional memorandum issued in March of 1994 that included the "bright line" language, there is no reason to think that the FBI's search missed that memorandum. When the FBI delivered the 1994 Freeh Memorandum to Williams, Williams

---

[70] Williams's Reply at 3 (emphasis in original).

[71] Los Angeles Times Story, <u>docket no. 30-1</u>, filed Dec. 30, 2013.

14

claimed that it was not responsive to his request because it did not include any mention of "the Comptroller General or the Comptroller General's investigations, and neither did it include the phrase 'drawing a bright line in the sand.' It was also sent in 1994; whereas the document that Williams had requested was sent in 1993."[72] Having been informed by Williams that the 1994 Freeh Memorandum was not responsive for these reasons, the FBI would not search for or report having located documents that suffer from the same defects.

The Los Angeles Times story quotes the memorandum as stating that Freeh intends to "draw a bright line," not to "draw a bright line in the sand."[73] There is nothing at all to suggest any reference to the Comptroller General or the Comptroller General's investigations in the memorandum. The FBI notes that its search of the ECF was limited to documents dated January 1, 1993, through January 3, 1994.[74] It was reasonable to limit its search in this way because Williams assured the FBI that a document would be responsive only if it was distributed in 1993. It is not "strange" at all that a memorandum allegedly sent in March of 1994 was not located by the FBI's search. Even if it had been located, the document would not have been responsive to Williams's request. The FBI cannot be faulted for failing to locate and disclose documents that are not responsive to Williams's FOIA request.

Third, the "[f]ailure to locate specific documents does not render the agency's search inadequate or demonstrate that the search was conducted in bad faith."[75] In determining whether an agency's search was reasonable and in good faith, "the focal point of the judicial inquiry is the agency's search process, not the outcome of its search."[76] Even assuming that the FBI's search

---

[72] Williams's Opposition at 13, ¶ 4.

[73] Los Angeles Times Story, docket no. 30-1, filed Dec. 30, 2013.

[74] Second Hardy Dec. at 4, ¶ 9.

[75] *Hall v. C.I.A.*, 881 F. Supp. 2d 38, 61 (D.D.C. 2012).

[76] *Trentadue v. F.B.I.*, 572 F.3d 794, 797 (10th Cir. 2009).

15

missed a memorandum issued by Director Freeh in March of 1994 that included the "bright line" language, that fact does not show that the search was conducted in bad faith or was otherwise inadequate.

### 3. Evidentiary Objections to the FBI's Declarations

In a footnote, Williams argues that the FBI's declarations include hearsay evidence that is not admissible.[77] In supporting or opposing a summary judgment motion, "[a] party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence."[78] Williams says there are two problems with the declarations. First, Hardy's declarations do not show that his description of the searches conducted by the FBI was based on his personal knowledge. Second, the description of the searches includes hearsay.

"[D]eclarations and affidavits are the widely accepted, even the preferable, means for an agency to respond to concerns about the adequacy of a FOIA search."[79] "[A] declarant in a FOIA case satisfies the personal knowledge requirement . . . if in his declaration, [he] attests to his personal knowledge of the procedures used in handling [a FOIA] request and his familiarity with the documents in question."[80] "[A]n agency need not submit an affidavit from the employee who actually conducted the search. Instead, an agency may rely on an affidavit of an agency employee responsible for supervising the search."[81] Hardy states that he supervises FBI searches in response to FOIA requests,[82] is familiar with FBI procedures for responding to such

---

[77] Williams's Opposition at 7 n.13.

[78] Fed R. Civ. P. 56(c)(2).

[79] *Trentadue*, 572 F.3d at 807.

[80] *Schoenman v. F.B.I.*, 575 F. Supp. 2d 166, 171 (D.D.C. 2008) (internal quotation marks omitted) (alterations in original).

[81] *Maynard v. C.I.A.*, 986 F.2d 547, 560 (1st Cir. 1993).

[82] Hardy Dec. at 1–2, ¶ 2.

requests,[83] and is familiar with the handling of Williams's request through his supervisory capacity at the FBI.[84] Hardy's declaration is adequately based on his personal knowledge.

Williams claims that paragraph twenty of Hardy's declaration contains inadmissible hearsay regarding the FBI's contact with the FBI historian, Director Freeh's former speech writer, and personnel at the Office of Public Affairs. Hardy states that the FBI contacted the FBI historian, who spoke with Director Freeh's speech writer, who did not remember if Director Freeh issued any memorandum before 1994.[85] Hardy also states that the FBI contacted personnel at the Office of Public Affairs, which acquired no additional information.[86]

A variety of courts have held that "FOIA declarants may include statements in their declarations based on information they have obtained in the course of their official duties," even where those statements include hearsay.[87] Because the person in charge of the FOIA search is "the most appropriate person to provide a comprehensive affidavit,"[88] and that person often will not be conducting the search herself,[89] it is inevitable that the affidavit or declaration will report upon what other parties did and discovered.

Often, hearsay is permitted in an agency affidavit where the statements are made by agency personnel under the supervision of the declarant and concern the searches those employees conducted. Hardy's statement regarding the FBI historian and Director Freeh's speech writer is, however, problematic because it reports statements by parties who were not

---

[83] *Id*. at 2, ¶ 3.

[84] *Id*. at 2, ¶ 3.

[85] Hardy Dec. at 7–8, ¶ 20.

[86] *Id*.

[87] *See*, *e.g.*, *Barnard v. Dep't of Homeland Sec.*, 598 F. Supp. 2d 1, 19 (D.D.C. 2009) (refusing to exclude hearsay in FOIA declaration); *SafeCard Servs., Inc. v. S.E.C.*, 926 F.2d 1197, 1201 (D.C. Cir. 1991) (same).

[88] *SafeCard Servs., Inc.*, 926 F.2d at 1201.

[89] *Maynard v. C.I.A.*, 986 F.2d 547, 560 (1st Cir. 1993) (noting that an agency's FOIA affidavit need not be submitted by the party or parties who actually conducted the search).

under Hardy's supervision. The statement was from Director Freeh's former speech writer, as relayed by the FBI Historian, who was asked to check into the matter by an FBI employee, presumably not Hardy. As a result, no consideration is given the statement in paragraph twenty of Hardy's declaration that Director Freeh's former speech writer does not recall "if Director Freeh issued any memorandum before the year 1994."[90] The remaining statements in paragraphs nineteen and twenty of Hardy's declaration are admissible.

### C. Conclusion

The FBI has conducted a search reasonably calculated to recover the document that Williams requested. The declarations submitted by the FBI are entitled to a presumption of good faith, a presumption that Williams has not sufficiently rebutted. Those declarations provide detailed information regarding the FBI's file system, the manner in which that system was searched, and the reasons that additional searches would be burdensome and would not likely succeed in locating the document. Though one of the statements in the FBI's first declaration is inadmissible hearsay, the remaining statements in the declarations are sufficient to carry the FBI's burden on summary judgment. Because there is no material dispute whether the FBI has satisfied its obligations under FOIA, and there are no other material disputes in the case, the FBI's motion for summary judgment is granted. Williams's motion to compel the FBI to conduct additional searches is denied.

**ORDER**

IT IS HEREBY ORDERED that Defendant's Motion for Summary Judgment and Supporting Memorandum[91] is GRANTED.

---

[90] Hardy Dec. at 8, ¶ 20.

[91] Docket no. 13, filed July 30, 2013.

IT IS FURTHER ORDERED that Plaintiff's Opposition to FBI's Motion for Summary Judgment and Motion to Have the FBI Conduct Additional Searches[92] is DENIED.

DATED this 31st day of March, 2014.

                                                 David Nuffer
                                               U.S. District Judge

---

[92] Docket no. 16, filed Sept. 25, 2013.